UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HENRIETTA ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-CV-01155 CDP |
| | ) | |
| ST. LOUIS METROPOLITAN POLICE | ) | |
| DEPT. BOARD OF POLICE | ) | |
| COMMISSIONERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Henrietta Arnold is a former lieutenant with the St. Louis Metropolitan Police Department.  On June 28, 2011, she filed this action against the Police Department's governing body – the Board of Police Commissioners – as well as its individual members and her supervisors.  Along with a state-law claim of "defamation of character and emotional stress," Arnold alleged that during her employment with the Police Department, several of her superiors discriminated against her because of her race and sex, retaliated against her for complaining about discriminatory treatment, subjected her to a hostile work environment, and sexually harassed her.  She requests injunctive and monetary relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.

## I.      Procedural History

On July 27, 2011, I dismissed the claims against the supervisor defendants (Daniel Isom, Antoinette Filla, Reggie Harris, Steven Mueller, Mary Warnecke, and William Swiderski) because claims against individual supervisors are not cognizable under Title VII.  *Arnold v. St. Louis Metro. Police Dep't*, No. 4:11-CV-1155 CDP, 2011 WL 3235722 (E.D. Mo. July 27, 2011).  *See also Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998) (supervisors cannot be held liable in their individual capacities under Title VII).  I also dismissed the defamation claim, finding that Arnold's allegations failed to state a claim for which relief could be granted under Missouri law.  I construed Arnold's "emotional stress" claim as a request for emotional-distress damages relative to Arnold's remaining Title VII claims.  *See Estelle v. Gamble*, 429 U.S. 97, 99 (1976) (pro se complaints must be liberally construed).

### a.      *Remaining Claims*

Remaining are Arnold's Title VII claims against the Board of Police Commissioners and its individual members, Bettye Battle-Turner, Richard Gray, Michael Gerdine, and Francis Slay.  Arnold asserts that the Board and its members "allowed [her] supervisors to treat [her] differently" and "supported the bullying

– 2 –

and harassment [she has] been forced to endure" even though they were "made aware of" the discrimination.  (Comp., Attach. B, § I.)

I construe her allegations as a claim that the defendants, as her former employer, are vicariously liable for the alleged discrimination, retaliation, and sexual harassment.  *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) ("In express terms, Congress has directed federal courts to interpret Title VII based on agency principles.").

In her pro se complaint, Arnold describes in detail a series of acts by her supervisors that she perceived as discriminatory, retaliatory, or harassing.  Though the events are diverse, they can be grouped as follows:[1]

- Captain Steven Mueller treated her differently than similarly situated white males, discriminated against her because of her race and sex, and created a hostile work environment through repeated discrimination.

- Captains Antoinette Filla, Mary Warnecke, and William Swiderski retaliated against her by writing her up and suspending her after she filed an internal grievance against Mueller for discriminating against her.

- Colonel Reggie Harris sexually harassed her by kissing her against her wishes and calling her cell, home, and work numbers repeatedly.  Harris later refused to allow her to retire with benefits.

---

[1] Any acts that Arnold describes in her complaint that are *not* related to the three categories above are either time-barred or were not raised in her EEOC charge and will be dismissed, for reasons that are discussed in more detail below.

On September 24, 2012, I ordered the parties to submit supplemental briefing on issues related to Arnold's sexual harassment allegations.  Specifically, I asked the parties to address whether Arnold has been denied retirement benefits, whether her allegations amounted to a claim of *quid pro quo* sexual harassment, and whether – if they did – such a claim could be considered timely.

After reviewing the record and the supplemental briefs, I find that the defendants are entitled to judgment as a matter of law on all of Arnold's claims. Arnold has failed to establish a prima facie case of either sex or race discrimination because she has not shown she suffered any materially adverse employment action.  Arnold's hostile work environment claim also fails.  Insofar as it was grounded upon race- or sex-based discriminatory acts by Mueller, I find that, either individually or collectively, these acts were not severe or pervasive enough to support a prima facie claim.  Insofar as it was grounded upon sexual harassment by Harris, it is barred because it is untimely.  Finally, I find that Arnold did not exhaust her administrative remedies as to a potential *quid pro quo* sexual harassment claim because such a claim is not reasonably related to the allegations in her March 28, 2011 EEOC charge.

Accordingly, I will grant defendants' motion for summary judgment.

– 4 –

## II.    Summary Judgment Standard

In determining whether to grant summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the non-moving party.  Fed. R. Civ. P. 56(c); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The movant bears the burden of establishing that: (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Once the movant has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In addition, the movant will be entitled to summary judgment if the non-moving party has not made a sufficient showing on an essential part of his or her claim because "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Settle v. Ross*, 992 F.2d 162, 163 (8th Cir. 1993).

## III.   Scope of Allegations in EEOC Charge

Title VII, in which all of Arnold's remaining claims are grounded, imposes

liability on an employer who engages in certain discriminatory practices.  42

U.S.C. § 2000e-2 *et seq.*  Under Title VII, an aggrieved party must file a timely

charge of discrimination with the EEOC before she is permitted to bring suit in

federal court.  42 U.S.C. § 2000e-5(b), (c), (e).  The purpose of filing such a

charge "is to provide the Commission an opportunity to investigate and attempt a

resolution of the controversy through conciliation before permitting the aggrieved

party to pursue a lawsuit."  *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988).

The information contained in the EEOC charge "must be sufficient to give the

employer notice of the subject matter of the charge and identify generally the basis

for a claim."  *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1123 (8th Cir.

2006).  Entirely new allegations that appear for the first time in the federal-court

complaint should therefore be dismissed for failure to exhaust administrative

remedies if the EEOC charge did not provide notice that they would be raised.  *See*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850–53 (8th Cir. 2012) (citing

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108–09 (2002)).

In her EEOC charge, dated March 28, 2011, Arnold alleged:

– 6 –

I was hired by Respondent in October 1989.  My position is Lieutenant earning $60,000.00/annually.  My supervisor [is] Captain Doyle Dotson. I filed a complaint of race and sex discrimination against my former supervisor Captain Steve Mueller, in that he treats male employees better than females, in February 2010.  Since that time I have been retaliated against in the form of write-ups and have been out on suspension since December 7, 2010.  I was also sexually harassed by Colonel Harris, in that he told me that if I dated him he could make all my problems go away in August 2009 and continued through April 2010.

I believe that I have been discriminated against due to my race, African American, and sex, female[,] when I was subjected to sexual harassment by Colonel Harris and was treated differently than male officers by CPT Steve Mueller in that he wouldn't talk to me and would pass information to me through males. I believe that I am also being retaliated against for complaining of race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, in that I was written up several times and placed on suspension.

*a.*    ***Allegations of Retaliatory Write-Ups and Suspension***

In their motion for summary judgment, defendants urge me to disregard the allegations in Arnold's federal-court complaint about discriminatory acts committed by Warnecke, Swiderski, and Filla because Arnold only specifically names Harris and Mueller in her EEOC charge.  *See* 29 C.F.R. § 1601.12(b) ("[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise *to identify the parties,* and to describe generally the action or practices complained of.") (emphasis added). They argue that the EEOC charge did not give them sufficient notice that Arnold

– 7 –

was claiming discrimination based on the actions of anyone other than Mueller and Harris.

I disagree.  The undisputed facts show that the "write-ups" and "suspension" that Arnold refers to in her EEOC charge were initiated by Warnecke and Swiderski, as well as other supervisors, and the record contains no evidence that either Harris or Mueller ever wrote up or suspended Arnold.  Just because Arnold wrote in passive voice does not mean she failed to give the defendants sufficient notice of the substance of Arnold's charge of retaliation: that the write-ups and subsequent suspension she received were reprisal for her complaints about race and sex discrimination.

The Eighth Circuit has counseled that those filing charges "typically lack legal training," so their allegations "must be interpreted with the utmost liberality in order not to frustrate the remedial purposes of Title VII."  *Cobb*, 850 F.2d at 359.  An EEOC charge that "describe[s] *specifically* the *actions* complained of" is "legally sufficient under even a conservative construction standard."  *E.E.O.C. v. Michael Constr. Co.*, 706 F.2d 244, 248 (8th Cir. 1983), *cert. denied*, 464 U.S. 1038 (1984) (emphasis in original; quotation marks omitted).

By describing the allegedly retaliatory activity (write-ups and suspension) and a limited time period (after Arnold filed a formal complaint against Mueller in

February 2010), Arnold provided sufficient notice that her subsequent federal-court claim would include allegations against Warnecke, Swiderski, and Filla. *See, e.g.*, *Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir. 1985) (omission of a party's name from the EEOC charge did not automatically mandate dismissal of the subsequent Title VII action);  *Giandinoto v. Chemir Analytical Servs., Inc.*, 545 F. Supp. 2d 952, 958 (E.D. Mo. 2007) (dismissal not warranted where unnamed parties were complainant's supervisors and "the individuals responsible for the alleged violations").  *See also Williams v. Target Stores*, 479 Fed. Appx. 26, 28, 2012 WL 2849517 (8th Cir. 2012) (per curiam) (employer bears burden of proving lack of exhaustion of administrative remedies and "any doubt on the issue" is resolved for employee).

Based on the foregoing, I find that Arnold's allegations that, in retaliation for her complaints about discrimination, her supervisors wrote her up for incidents on May 9, 2010 and June 22, 2010; placed her on administrative duty and suspended her secondary employment on August 27, 2010; required her to serve a one-day suspension on September 22, 2010; and suspended her indefinitely on December 7, 2010, were directly alleged in the EEOC charge.

**b.**     _**Other Allegations of Retaliation**_

In her federal-court complaint, Arnold also lists allegations unlike and unrelated to the write-ups and suspension, such as Warnecke excluding her from a group email, Swiderski leaving her to handle three Districts alone while she was on limited duty, and Filla detaching her to a different division.  To the extent that these allegations would otherwise support any of Arnold's claims, they cannot be considered because she failed to allege them – or anything like them – in her EEOC charge.

Arnold's charge did "describe generally the . . . practices complained of," 29 C.F.R. § 1601.12(b), but those practices were limited to suspension and write-ups. "An employee may not bring allegations in a Title VII action if they go beyond those that could reasonably be expected to grow out of the charge of discrimination filed with the EEOC."  _Brooks v. Midwest Heart Group_, 655 F.3d 796, 801 (8th Cir. 2011) (quotation marks omitted).  An EEOC investigation could not reasonably be expected to encompass every action Filla, Swiderski, or Warnecke took toward Arnold.  _See, e.g., Richter_, 686 F.3d at 851 (each retaliatory incident is a separate act "for which administrative remedies must be exhausted"); _Artis v. Francis Howell N. Band Booster Ass'n, Inc._, 161 F.3d 1178, 1183 (8th Cir. 1998) (employee's EEOC charge that included allegation of

retaliation for one activity could not be enlarged to include allegation of retaliation for entirely different activity).

Thus, Arnold has failed to exhaust her administrative remedies as to any retaliatory act beside suspension and write-ups.

## IV.   Sex and Race Discrimination Claims

Title VII does not require direct evidence of discrimination.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003).  If there is no direct evidence, as in this case,[2] an employee can prove her claim circumstantially using the *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999).  Under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing a prima facie case of discrimination.  To meet this burden, an employee must prove that (1) she is a member of a protected class; (2) she met her

---

[2] Direct evidence is that which shows a strong causal link between the alleged discriminatory animus and the challenged decision.  *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).  The only evidence Arnold offers of race- or sex-based discriminatory animus is her testimony that Mueller made a derogatory remark about African-Americans at a roll call.  (Arnold Dep. 156:3–157:14.)  Such a comment would undoubtedly be offensive, but it does not constitute direct evidence.  *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000) ("stray remarks" that show racial animus are not direct evidence of discrimination if they are not sufficiently related to an adverse employment action).  *Accord Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 953 (8th Cir. 2011) ("Title VII . . . is not a general civility code for the American workplace.").

employer's legitimate expectations;[3] (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination (for example, the employee was treated differently than similarly situated employees who were not members of the protected class). *See Wilkie*, 638 F.3d at 954–55 (citing *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005)) (sex discrimination); *Lake*, 596 F.3d at 874 (race discrimination).

If the employee establishes a prima facie case, the "burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its decision.  If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext for discrimination."  *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (citing *Lake*, 596 F.3d at 873–74).

For the purpose of a Title VII discrimination claim, an adverse employment action is:

> a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive

---

[3]  The Eighth Circuit has held that there is no practical distinction between this formulation of the second prong and the formulation in *McDonnell Douglas* itself, which required a job applicant who alleged race discrimination to show that he was "qualified for the job."  *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) (collecting cases).

> discharge. Minor changes in duties or working conditions, even
> unpalatable or unwelcome ones, which cause no materially significant
> disadvantage, do not rise to the level of an adverse employment action.

*Wilkie*, 638 F.3d at 955 (citing *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926

(8th Cir. 2007)).  Even if true, Arnold's allegations do not demonstrate that she

suffered any materially adverse employment action in relation to her sex and race

discrimination claims, which will be dismissed for that reason.[4]

**a.    _Allegations Based on Mueller's Conduct_**

Arnold worked in the Police Department's Eighth District along with three

other lieutenants, who were all white men.  From January 2009 to June 2010,  the

four lieutenants were supervised by Captain Mueller.  Arnold alleged that Mueller,

who is also a white man, engaged in a pattern of treating her unfairly.  She

testified that Mueller:

- did not attend her roll calls, though he attended the other lieutenants' roll calls;
- failed to communicate her assignments and other vital information to her, and instead communicated directly with her subordinates, against protocol;
- told her subordinates to disregard her orders and not to speak to her;
- permitted the other lieutenants – but not her – to arrive at work late;

---

[4]  The defendants also argue that many of the reported incidents that support Arnold's claims of race and sex discrimination are untimely because they took place either before the EEOC filing period or outside the time period alleged in the EEOC charge. Because I find that these claims do not survive even if timely, I need not address these arguments.

- improperly "took back" days off that had been approved by a former supervisor;
- caused her to miss a mandatory school meeting;
- effectively blocked her application for a temporary assessor position in another state;
- disciplined her after she counseled an African American sergeant to report unfair treatment;
- falsely blamed her team for poor performance and took credit for their work;
- assigned "problem" employees to her and then transferred them as soon as their performance had improved;
- and generally held her to higher standards than other employees.

Arnold alleges that she complained to a superior, Lieutenant Colonel Antoinette Filla, about Mueller's behavior and filed a formal EEO Complaint against Mueller on January 22, 2010, which was investigated by an outside agency. Arnold attempted to provide information to the agency about continuing discriminatory behavior, but she was rebuffed. After the agency completed its investigation – which Arnold believes was incomplete – she repeated her allegations in her March 28, 2011 EEOC charge.

If Arnold's allegations are true, they reveal an unpleasant and uncooperative working environment. Nonetheless, these discrimination claims cannot survive summary judgment because Arnold has not alleged the discrimination led to a material change in the terms of her employment. *See Bechtel v. City of Belton*,

250 F.3d 1157, 1162 (8th Cir. 2001) ("Not everything that makes an employee

unhappy is an actionable adverse decision.").

**b.** ___Out-of-State Assessor Position___

The incident that comes closest to an adverse employment action is

Mueller's failure to approve Arnold's request to transfer to a temporary, out-of-

state assessor position.  (*See generally* Arnold Dep. 86:15–98:24.)  Arnold

testified that assessor positions became available from time to time and were filled

on a first-come, first-served basis by volunteers from the Department.  (Arnold

Dep. 88:11–13.)  Though the record is hazy on this point, it appears that a

lieutenant who wished to volunteer would email his or her supervising captain,

who would forward the request to Human Resources after verifying that there

were no "coverage" issues with the shifts the lieutenant was supposed to work.

Arnold alleges that when she volunteered for an assessor position, Mueller

did not forward her request promptly, so another lieutenant was selected.  Mueller

then failed to communicate this fact to Arnold, causing her uncertainty as to

whether she had been selected.  When Arnold contacted Human Resources and

discovered she had not been selected, she volunteered for a second opening, but

Mueller denied her request, citing coverage issues.  Mueller finally approved her

request for a third assessor position.  She testified that Mueller treated an assessor

request by another lieutenant, a white male, differently, by responding

immediately and volunteering to cover his shifts to solve the coverage issues.

(Arnold Dep. 87:16–17.)  Even if it is true that Mueller blocked Arnold's request,

this does not amount to a "materially adverse" employment action because it did

not change Arnold's working conditions, pay, or benefits in any tangible way.

*See, e.g.*, *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (transfer

involving no reduction in pay or benefits is not an adverse employment action);

*LePique v. Hove*, 217 F.3d 1012, 1014 (8th Cir. 2000) (same for refusal to transfer

after employee requested transfer); *Box v. Principi*, 442 F.3d 692, 696 (8th Cir.

2006) (same for temporary reassignment); *Griffith*, 387 F.3d at 737 (same for

denial of request for training).

c.      ***Captain's Exam***

        Arnold also alleges that she qualified to take the "Captain's Exam" before

she left the Department.  If she had been successful, she would have become

eligible for promotion to the rank of captain.  She testified that shortly before she

planned to sit for the exam, she heard from others that Mueller had disparaged her

work in a weekly meeting (that she did not attend) and falsely blamed her team for

the overall poor performance among those under Mueller's command.  (Arnold

Dep. 164:6–165:12, 171:9–173:25.)  According to Arnold, Mueller's statements

caused the police officers and sergeants she supervised to become upset and lose morale, and one of the officers requested a transfer to another division.  Because she believed at least some of the assessors who would judge her work on the Captain's Exam were present at the meeting, she chose not to take the exam.

A plaintiff who does not apply for a promotion may nonetheless establish a prima facie case of failure-to-promote if she fulfills the "difficult task" of proving that the employer's discriminatory practices made application futile.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366–68 (1977). In *McClure*, an employee brought race and sex discrimination claims under 42 U.S.C. § 1981 and state law.  *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1136 (8th Cir. 2006).  The Eighth Circuit found that the employee, who had not applied for a promotion, could not prove that it would have been futile.  The employee claimed that Human Resources told him the senior position required a master's degree, but a conspicuous job posting showed it only required an associate's degree, which the employee had earned.

Likewise, Arnold does not make the requisite showing here that sitting for the Captain's Exam would have been "vain and futile."  *McClure*, 447 F.3d at 1136.  Despite having had problems with Mueller when she was a sergeant, she had been promoted to the rank of lieutenant.  Mueller had, in fact, approved her

request to take the Captain's Exam.  (Arnold Dep. 171:3–6, 173:21.)  She admitted

during her deposition that she did not know, in fact, whether any of the assessors

who would judge her performance had been at the meeting at which she alleges

Mueller made the critical statements.  (Arnold Dep. 173:1–10.)  Like in *McClure*,

no reasonable jury could conclude that sitting for the Captain's Exam would have

been futile.  *See Callaghan v. Dep't of Veterans Affairs*, No. 4:10-CV-1049 JLH,

2011 WL 1559210, at *2 (E.D. Ark. April 25, 2011) (failure to apply not excused

for an employee who applied for a promotion but then retracted his application

based on a conversation in which someone remarked that another applicant had

been selected); *Lloyd v. City of St. Charles*, No. 4:07-CV-1935 JCH, 2009 WL

485078, at *6 (E.D. Mo. Feb. 26, 2009) (in a First Amendment case, police officer

who voluntarily withdrew his name for promotion after he was transferred did not

incur adverse employment action); *Cotton v. AT&T Operations, Inc.*, No. 4:06-

CV-438 CAS, 2007 WL 2259318, at *6 (E.D. Mo. Aug. 2, 2007) (employee who

failed to "complete the requisite management candidacy process" could not

establish prima facie case of failure-to-promote).  Further, Arnold's evidence that

it would have been futile to sit for the exam consists entirely of hearsay,[5] which

---

[5] For example, Arnold states, "Plaintiff was not at work when the statements were made; however received calls at home and upon returning to work her officers appeared upset and informed Plaintiff that they too had been made aware of the comments, causing morale issues."

cannot defeat a motion for summary judgment. *Cronquist v. City of Minn.*, 247 F.3d 920, 927 (8th Cir. 2001).

Based on the foregoing, Arnold has not established a prima facie case of either sex or race discrimination because she has not created a genuine issue of fact as to whether she suffered a materially adverse employment action. The defendants are therefore entitled to summary judgment on these claims. *Weber v. American Exp. Co.*, 994 F.2d 513, 516 (8th Cir. 1993) ("If the plaintiff fails to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate.").

### d.    *Hostile Work Environment Claim*

Construing Arnold's complaint liberally, *Estelle*, 429 U.S. at 106, it is possible she intended to bring a hostile work environment claim grounded upon race- or sex-based harassment by Captain Mueller. A plaintiff bringing a hostile work environment claim – like any other discrimination claim – must have experienced an adverse employment action. *See Willis v. Henderson*, 262 F.3d 801, 808 (8th Cir. 2000) (one element of prima facie showing is that "the harassment affected a term, condition or privilege of employment").

_____

(Mem. in Opp. to Defs.' Mot. for Summ. J., p. 2.)

However, "sufficiently severe and pervasive" sexual or racial harassment amounts to adverse action because it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Such is the case when "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Id.*  To determine whether harassing conduct is so "severe or pervasive" that it can support a hostile work environment claim, courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

In *Bradley v. Widnall*, a civilian employee of the Air Force alleged that her supervisor had created a racially hostile work environment.  232 F.3d 626 (8th Cir. 2000).  The employee, who was African-American, asserted that her supervisor:

> made various negative comments in her regard, removed much of her decision-making authority, encouraged her employees to bypass the chain of command, gave white employees preferential treatment, instructed employees to spy on her activities, had disparaging memos placed in her file, attempted to "set her up" to fail a hospital inspection, and generally treated her in a disrespectful and discriminatory manner.

*Id.* at 630.  The Eighth Circuit held that, although such conduct "may have resulted in a frustrating work situation," it was not severe or pervasive enough to support her hostile work environment claim.  *Id.* at 631–32.

Likewise, here, Arnold alleges that Mueller, at turns, ignored and scapegoated her.  She asserts – among other things – that he failed to communicate key information with her or attend her roll calls; encouraged her subordinates to bypass her and report to him; publicly and falsely blamed her team for low productivity, causing low morale among her officers; and demanded Arnold be punctual while allowing white lieutenants to arrive at work late.  (Arnold Dep. 33:6 –35:16; 40:20–42:9; 57:21–60:6.)

Though Mueller's alleged conduct was undoubtedly objectionable, I must consider whether it could constitute "severe or pervasive" harassment in light of the *Harris* factors.  Arnold has alleged that the conduct was frequent; that Mueller failed to tell her about assignments, which may have "unreasonably interfered with" her work performance; and that Mueller embarrassed her and her officers in front of their superiors.  (*See, e.g.,* Compl., Attach. B., pp. 3–5.)

But considering the Eighth Circuit's guidance in *Bradley*, I must conclude that Mueller's conduct did not rise to the level of "severe or pervasive" harassment capable of supporting a hostile work environment claim. Arnold has not alleged

that Mueller physically threatened her or even made offensive remarks to her.  To the contrary, many of her allegations center around his failure to communicate with her at all.  Further, according to Arnold's own testimony, she and her officers were able to be productive despite Captain Mueller's conduct.  (Arnold Dep. 165:17–20, 166:3–9.)  Arnold testified also that she had worked under Mueller's supervision at three separate times during her tenure with the police department, yet she successfully advanced to the rank of lieutenant.  (*Id.* 10:16–12:18, 17:14–21:23, 36:5–11, 37:7–9.)  Mueller had even approved Arnold's application to sit for the Captain's Exam.  (*Id.* 171:3–175:13.)  Like the supervisor in *Bradley*, Mueller's conduct was likely frustrating, but a reasonable jury could not conclude that it was so "severe or pervasive" as to support racially or sexually hostile work environment claim.

## V.   <u>Retaliation Claim</u>

### a.   <u>*Timeliness of Allegations*</u>

Under Title VII, an EEOC charge must be filed within 300 days of an alleged unlawful employment practice, or else the plaintiff loses the opportunity to

file suit based on that practice.  42 U.S.C. § 2000e-5(e).  The allegations in

Arnold's EEOC Charge, filed on March 28, 2011, are timely.[6]

Arnold alleged that she was written up and suspended in retaliation for

filing a formal complaint against Mueller.  *See supra.*  According to her

subsequent federal-court complaint, she was written up or suspended – or

questioned about the incidents leading to write-ups and suspension – on the

following dates in 2010:

- July 3 (written up for an incident that occurred that day)
- July 17 (written up for incidents that occurred May 9, 2010 and June 22, 2010)
- August 27 (placed on administrative duty and secondary employment suspended due to pending write-ups)
- September 21 (questioned abut July 3 incident)
- September 22 (served a one-day suspension for the May 9 incident)
- October 14 (questioned about July 3 incident)
- December 7 (written up for incident that occurred July 28; supervisors tried to persuade Arnold to resign but when she declined, suspended her indefinitely without pay based on July 3 incident; escorted her from the building)

_____

[6] Title VII provides for a 180-day, baseline filing period unless the complainant also files a charge with an appropriate state agency.  Though Arnold did not file a state-agency charge, Missouri law provides that a complaint filed with the EEOC is also "deemed filed" with the Missouri Commission on Human Rights.  Mo. Rev. Stat. § 213.075.2.  Therefore, Arnold is entitled to the 300-day filing period.

**b.**   ***Prima Facie Claim***

As with discrimination claims, a plaintiff bears the initial burden of setting

out a prima facie retaliation claim. *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d

98, 100 (8th Cir. 1995).  In order to make a successful prima facie showing, the

plaintiff must set forth evidence that (1) she engaged in statutorily protected

activity; (2) she suffered an adverse employment action; and (3) there was a causal

connection between the adverse employment action and the protected activity.  *Id.*

The defendants concede that Arnold participated in an activity protected by

Title VII when she filed an EEO Complaint about Mueller in February 2010.  But

they argue, first, that Arnold has not demonstrated that she suffered an adverse

employment action.  I disagree.  It is well-established that job changes that affect a

material term of employment are adverse employment actions within the meaning

of Title VII, and Arnold has alleged that she was suspended indefinitely without

pay beginning December 7, 2010.  Her suspension undoubtedly constitutes an

adverse employment action.  *McClure*, 447 F.3d at 1137.  In addition, it is possible

for write-ups to amount to adverse actions.  *See Pittman v. Riplet Cnty. Mem.*

*Hosp.*, No. 1:07-CV-00111 LMB, 2009 WL 1738491, at *8 (E.D. Mo. June 19,

2009) (employee who had received three write-ups had suffered adverse action

because the "threat of receiving written warnings from one's supervisor could

reasonably deter a victim of discrimination from complaining of the discrimination"). But even assuming each allegation Arnold made amounted to an adverse action, Arnold has not set forth any evidence that they were "causally connected" to her grievance against Captain Mueller.

In order to demonstrate a "causal connection" between a protected activity and an adverse action, an employee must show "that an employer's retaliatory motive played a part in the adverse employment action." *Kipp v. Mo. Highway & Transp. Com'n.*, 280 F.3d 893, 897 (8th Cir. 2002) (internal quotations omitted). "[E]vidence that gives rise to an inference of such a motive is not only sufficient to prove the required causal link but is also necessary." *Id.*

In *Kipp*, a longtime maintenance crew worker applied for and was denied a promotion. She then filed a complaint with the EEOC alleging sex discrimination. After she filed the complaint, the girlfriend of a more senior maintenance crew worker wrote the employer a letter asserting that the employee was often away from her job during the day. The allegations in the letter were investigated by the employer's human resources manager and were ultimately substantiated. The employer terminated the maintenance crew worker a little over two months after she filed the initial discrimination complaint. The worker filed suit alleging that she was fired in retaliation for filing the EEOC complaint, and a jury agreed. But

the Eighth Circuit reversed, holding that no reasonable jury could find that the employee had established a causal connection between the EEOC charge and her termination.  The Court examined five pieces of evidence that the employee argued should support an inference that her employer was motivated, in part, by retaliation.  Ultimately, it held that the two-month gap between protected activity and discharge; the letter written by the girlfriend; the fact that other employees who left their jobs during the day had not faced discipline; the lack of warning before termination; and the maintenance crew worker's solid track record were not sufficient to establish a causal connection.  *Id.* at 896–98.

In this case, there was a gap of more than four months between Arnold's EEOC complaint against Mueller (in February 2010) and her first write-up (in July 2010).  The gap between her complaint and her indefinite suspension (in December 2010) was almost ten months and does not constitute a prima facie showing of a "causal connection."  *See id.* (a two-month gap "so dilutes any inference of causation that we are constrained to hold as a matter of law" that it was insufficient to fulfill plaintiff employee's burden).  Though Arnold made general statements in her deposition that "[n]obody else was treated that way," Arnold Dep. 216:25, she presents no other evidence that her write-ups and suspensions were  motivated, even in part, by her grievance against Mueller.

Rather, she acknowledges repeatedly that the proffered reason for her suspension was an incident that occurred on July 3, 2010, in which Arnold was implicated in making an allegedly false arrest.  Arnold alleges she was repeatedly questioned about the July 3 incident; a newspaper article about the incident was hung at the Police Department; and the arresting officer was ordered not to speak to her. None of these allegations support a finding that there was a causal connection between Arnold's EEOC complaint and her subsequent write-ups and suspensions. As the Eighth Circuit pointed out in *Kipp*:

> We are aware that a person who files a discrimination complaint often places herself in a position of vulnerability and may face hostility or retaliation from co-workers, members of her community, and even friends. But the law shields employees only from *employers* who retaliate against them for committing legally protected acts.

*Id.* at 897 (emphasis added).

I have carefully examined the record, and though Arnold presents a veritable deluge of dates and facts, none of the evidence she offers creates an issue of fact as to whether there was a causal connection between the EEOC complaint she filed against Mueller and any subsequent adverse employment action.  In fact, as the defendants point out, she testified that the poor treatment she received from various supervisors before filing the complaint continued unchanged after she filed the complaint.  (Arnold Dep. 108:22–114:23.)  Because Arnold has failed to

– 27 –

make a prima facie showing, the defendants are entitled to summary judgment on her retaliation claim.

## VI.    <u>Sexual Harassment Claim</u>

Arnold has alleged that she was sexually harassed by Lieutenant Colonel Reggie Harris, who directed the Internal Affairs Division at the Police Department.  As a threshold matter, the defendants have effectively conceded – and I agree – that at the very least, Arnold's allegations have created a question of fact that Harris was Arnold's supervisor, permitting a finding that defendants were vicariously liable for Harris' actions.  *See E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 684 (8th Cir. 2012) ("To be considered a supervisor, the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties.") (quotation marks, brackets omitted); *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 419 (8th Cir. 2010) (employer can only be vicariously liable for sexual harassment perpetuated by supervisors, not non-supervisory coworkers).  Arnold testified that Harris oversaw investigations of employees of her rank and offered her a position with IAD, which I find are sufficient to support a finding that he was her supervisor, despite the fact that he was not in her direct chain of command.  *See Todd v. Ortho*

– 28 –

*Biotech, Inc.*, 175 F.3d 595, 598 (8th Cir. 1999) (declining to determine as a matter of law whether a superior not in an employee's chain of command could be a "supervisor" for the purpose of vicarious liability under Title VII).

### a.    *Time-Barred Allegations*

Arnold alleges that in August 2009, Harris came to her house uninvited, where he made sexually explicit comments to her about her bed and hot tub and eventually kissed her.  She asserts that she jerked away and told him she was not interested in a sexual relationship with him.  After that, he allegedly came to her office on several occasions, closed the door, and made sexual comments.  She testified in her deposition that he called her personal cell phone repeatedly and "talk[ed] about having sex with me," and when she did not answer, he called her office phone.  (Arnold Dep. 189:25–190:1, 138:25–141:18.) When she did not answer that phone, he called the desk officer near her station to ask the officer if she was there.  Finally, she alleged that in April 2010, Harris summoned her to his office at the end of the workday and offered her a position with IAD, his division.  While at his office, Harris allegedly kissed Arnold a second time, against her wishes.   She testified that:

> And I felt the [IAD] job was his way of trying to get me to do it again.  I'm still saying no, and now all of a sudden, you want me to work for you, you said.  And then you try to kiss me, and I say, 'I can't do it.'  And now all of a sudden,

> things go real bad.  So that's when all these complaints started coming out of IAD against me and all that, after I said no.  And that's the way I saw it.

(*Id.* 190:14–22.)  After the April 2010 encounter, Arnold "just avoided [Harris] as much as I could.  And at times, I don't think he was really able to really catch me, because, by then, I learned his pattern.  I knew when he was coming.  I'd just leave."  (*Id.* 191:21–25.)  The defendants' counsel asked her whether Harris "ma[d]e any other inappropriate sexual acts towards you after he kissed you the second time in his office," to which Arnold replied, "He couldn't because I ensured . . . that we weren't alone."  (*Id.* 192:21–25.)

Arnold has not set forth any evidence, including her own testimony, that creates an issue of fact as to whether Harris made a sexual overture toward her during the EEOC filing period, which ran from June 1, 2010 to March 28, 2011, the date she filed her EEOC charge.  42 U.S.C. § 2000e-5(e).  Rather, she acknowledges that nothing untoward occurred after April 2010, before the filing period began.  Because Arnold has not alleged that even one act contributing to her sexual harassment claim occurred within the EEOC filing period, her claim is time-barred.  *See Morgan*, 536 U.S. 101, 117 (2002) (one act contributing to a hostile work environment sexual harassment claim must occurs within the statutory time period for claim to be timely); *Mohasco Corp. v. Silver*, 447 U.S.

807, 826 (courts should strictly adhere to Title VII procedural requirements to ensure "evenhanded administration of the law").

**b.**      ***Quid Pro Quo Sexual Harassment Claim Not Exhausted***

The Supreme Court has held that, for the purpose of determining whether a plaintiff has established a prima facie sexual harassment claim, it is helpful to distinguish between hostile work environment claims and *quid pro quo* claims. *Ellerth*, 524 U.S. at 753–54. "Sexual harassment is *quid pro quo* if a tangible employment action follows the employee's refusals to submit to a supervisor's sexual demands." *Anderson v. Family Dollar Stores of Ark.*, 579 F.3d 858, 863 (8th Cir. 2009).

Though she did not mention it in her EEOC Charge, Arnold alleged in her federal-court complaint that Harris, among others, denied her benefits she was entitled to when she attempted to retire from the police department. (Comp., Attach. B., p. 10.) As the record was notably imprecise about this incident, I requested supplemental briefing on several issues related to it. I asked the parties to address: (1) what retirement benefits, if any, Arnold did not receive; (2) whether Arnold had alleged that her retirement benefits were withheld by Harris in retaliation for her refusal to have a sexual relationship with him; and (3) whether a *quid pro quo* sexual harassment claim can survive when the adverse employment

action is taken within the EEOC filing period but the sexually harassing incidents are not.

I have carefully reviewed the record, including the parties' supplemental briefs.  I conclude that under the standard articulated in *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847 (8th Cir. 2012), Arnold failed to exhaust her administrative remedies as to a potential *quid pro quo* sexual harassment claim because she did not mention the denial of benefits – or anything like it – in her EEOC Charge.

In *Richter*, a white female store manager was discharged after she reported to her African-American supervisor that another employee had committed theft. She filed an EEOC charge alleging race and sex discrimination.  But in her subsequent federal-court complaint, she did not allege she was fired because of her race and sex.  Rather, she alleged she was fired in retaliation for reporting the theft.  The Eighth Circuit held that she had failed to exhaust her administrative remedies as to her retaliation claim because it was not reasonably related to the allegations she made in the EEOC charge.  *Id.* at 852–53.  Even though the manager had maintained her claim that she was fired unlawfully, her claim that the termination was retaliatory was a separate unlawful employment practice from her initial allegation that it was discriminatory.  Therefore, the Eighth Circuit held, the

district court had properly dismissed her claim for failure-to-exhaust because the text of Title VII and Supreme Court precedent requires that "the complainant must file a charge with respect to each alleged unlawful employment practice." *Id.* at 851.

Applying *Richter* here, Arnold's claim that she was unlawfully denied retirement benefits constitutes a discrete unlawful employment practice.  Because she did not mention that denial in her EEOC charge, it has not been exhausted. Therefore, I cannot consider it as the basis of a *quid pro quo* sexual harassment claim, and defendants are entitled to summary judgment on that claim.

## VII.  <u>Conclusion</u>

Based on the foregoing, I conclude that defendants are entitled to summary judgment on all of Arnold's claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment [#40, #56] are **GRANTED**.  A separate judgment in favor of the defendants is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of January, 2013.

– 33 –